# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

AMERICAN ACTION NETWORK, INC.,   :
                                   :

        Plaintiff,                   :      Civil Action No.:     12-1972 (RC)
                                     :

        v.                           :      Re Document Nos.:    6, 9, 19
                                     :

CATER AMERICA, LLC *et al.*,            :
                                     :

        Defendants.                :

## MEMORANDUM OPINION

**GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS OR TRANSFER; FINDING AS MOOT PLAINTIFF'S MOTION FOR JURISDICTIONAL DISCOVERY; AND DENYING PLAINTIFF'S MOTION TO COMPEL AND FOR RULE 37 SANCTIONS**

## I. INTRODUCTION

This matter comes before the Court on the defendants' motion to dismiss. The plaintiff is an advocacy group based in Washington, D.C. The defendants are a Wyoming-based limited liability company and its sole owner. This breach of contract action arises out of the parties' agreement to sponsor a Lynyrd Skynyrd concert during the 2012 Republican National Convention in Tampa, Florida, and the concert's subsequent cancellation due to inclement weather. The plaintiff alleges two claims: one arising out of a $150,000 deposit for concert tickets, and another related to an alleged $200,000 loan. The defendants move to dismiss the complaint for lack of personal jurisdiction and improper venue, suggesting that this case "must be traveling on now"[1] to Florida, where the concert was to occur and the defendants operated at the time of the contract's execution. Alternatively, the defendants move to dismiss the complaint's unjust enrichment and alter ego claims pursuant to Federal Rule of Civil Procedure

---

[1] Lynyrd Skynyrd, *Free Bird*, *on* (Pronounced 'lĕh-'nérd 'skin-'nérd) (MCA Records 1973).

12(b)(6).  For the reasons discussed below, the Court will dismiss the plaintiff's unjust enrichment allegation in relation to the alleged $150,000 ticket deposit, but will deny the remainder of the defendants' motion.  The plaintiff has filed motions for jurisdictional discovery and sanctions, which the Court will also deny.

## II.  FACTUAL BACKGROUND

American Action Network, Inc. ("AAN"), the Plaintiff in this suit, is a Delaware Corporation and center–right advocacy group with its principal (and only) place of business in the District of Columbia.  *See* Compl. ¶ 2(a), ECF No. 1.  Defendant Cater America, LLC ("Cater") is an event production company founded in Colorado with its principal place of business in Wyoming, and Defendant Robert Wayne Jennings is a citizen of Wyoming and the sole owner of Cater.  *See id.* ¶ 2(b)–(c); Cater Aff. ¶ 5, ECF No. 6-2.  In 2011, Cater engaged with Julie Conway, an active political and nonprofit fundraiser operating within the District of Columbia, to discuss the possibility of hosting events during the 2012 Republican National Convention ("RNC") in Tampa, Florida.  *See* Conway Decl. ¶ 5, ECF No. 10-1.  Ms. Conway subsequently contacted Pete Meachum, Director of Development at AAN, to explain Cater's desire to host events at the RNC and its interest in securing partners to facilitate the process.  *See id.* ¶ 8.  According to Mr. Meachum's recollection of the discussion, Ms. Conway said that Mr. Jennings had arranged for her to connect him with D.C. organizations that might be interested in hosting events during the RNC.  *See* Meachum Decl. ¶ 2, ECF No. 8-1.

In December 2011, Mr. Jennings traveled to Washington, D.C., and met with Mr. Meachum in person to further discuss the prospect of working together to host events in connection with the RNC, including the Lynyrd Skynyrd concert.  *See* Cater Aff. ¶ 7, ECF No. 6-2; Conway Decl. ¶¶ 10–12, ECF No. 10-1.  At that meeting, Mr. Jennings indicated that he

was seeking sponsors who would advance funds in exchange for various sponsorship benefits, such as publicity during the course of the events that Cater hosted and blocks of tickets at those events. *See* Meachum Decl. ¶¶ 3–4, ECF No. 8-1. Mr. Meachum related that AAN would potentially be interested in such an arrangement, and both parties agreed to remain in contact to further explore the possibility of a partnership. *See id.* ¶ 5.

Through subsequent telephonic and email communications, AAN and Mr. Jennings agreed in principle to an arrangement in which AAN would sponsor a Kid Rock concert hosted by Cater. *See id.* ¶ 6. Cater also dealt with AAN through its counsel, Elliot Berke, an attorney at McGuireWoods LLP, located on K Street in Washington, D.C. *See id.* ¶ 8. In the subsequent months, Mr. Berke and AAN's counsel, who was also operating within the District of Columbia, negotiated and finalized agreements pertaining to a variety of events scheduled to be held at the RNC, including the Kid Rock and Lynyrd Skynyrd concerts. *See id.* ¶ 9. As part of their relationship, AAN and Defendants also reached out to several other musical acts, including Dolly Parton, Kelly Clarkson, Pitbull, and Lady Gaga. *See* Conway Decl. ¶ 22, ECF No. 10-1.

AAN alleges that, pursuant to the contract governing the Lynyrd Skynyrd concert (the "Skynyrd Contract"), it paid $150,000 to Cater for tickets to the event with the understanding that this amount would be refunded should the event be cancelled for any reason other than AAN's gross negligence, willful misconduct, or material breach of the agreement. *See* Compl. ¶ 6, ECF No. 1. The Lynyrd Skynyrd concert was subsequently cancelled due to inclement weather. *See id.* ¶ 7. It is Defendants' position that the $150,000 was payment for work already rendered, *see* Defs.' Mem. P. & A. Supp. Mot. Dismiss 2, ECF No. 6, and they have refused to refund the money, *see* Compl. ¶ 7, ECF No. 1. AAN also alleges that in the course of their

dealings it lent Defendants an additional $200,000 to "conduct events and carry out obligations" in Florida, and that Defendants have also refused to repay those funds. *See id.* ¶ 8.

On December 10, 2012, AAN filed a complaint against Defendants stating two causes of action: one claim for breach of the Skynyrd Contract or, in the alternative, unjust enrichment arising out of its alleged $150,000 ticket deposit; and another claim for breach of contract or, in the alternative, unjust enrichment in relation to the alleged $200,000 loan. *See id.* ¶¶ 12–13. Defendants have moved to dismiss the complaint, asserting three different grounds for dismissal: lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), improper venue under Rule 12(b)(3), and failure to state a claim under Rule 12(b)(6). *See generally* Defs.' Mot. Dismiss, ECF No. 6. In its response, AAN opposed Defendants' motion and moved, in the alternative, for leave to conduct jurisdictional discovery to bolster its arguments that personal jurisdiction and venue are proper here. *See generally* Pl.'s Opp'n Mot. Dismiss & Cross-Mot. Lim. Disc., ECF No. 8.

While the motions were pending, AAN contacted Defendants via email in order to press forward with a plan for jurisdictional discovery, and Defendants wrote back taking the position that discovery was premature absent an order from the Court. *See generally* Meet & Confer Stmt., ECF No. 17. AAN then filed a meet and confer statement, asserting that this brief email exchange between counsel constituted the parties' Rule 26(f) conference. *See id.* at 2. AAN later served document requests and a notice for the deposition of Mr. Jennings, which Defendants refused to answer. AAN then filed a motion to compel and for sanctions pursuant to Federal Rule of Civil Procedure 37. *See generally* Pl.'s Mot. Compel, ECF No. 19.

### III. PERSONAL JURISDICTION

#### A. Legal Standard

1. Personal Jurisdiction Generally

Defendants move to dismiss AAN's complaint for lack of personal jurisdiction. *See* Fed. R. Civ. P. 12(b)(2). To withstand a defendant's motion to dismiss under Rule 12(b)(2), a plaintiff bears the burden of making a prima facie showing of specific and pertinent jurisdictional facts. *See Reuber v. United States*, 750 F.2d 1039, 1052 (D.C. Cir. 1984), *abrogated on other grounds by Kauffman v. Anglo-Am. Sch. of Sofia*, 28 F.3d 1223 (D.C. Cir. 1994); *Naegele v. Albers*, 355 F. Supp. 2d 129, 136 (D.D.C. 2005); *United States v. Philip Morris, Inc.*, 116 F. Supp. 2d 116, 121 (D.D.C. 2000). "A plaintiff makes such a showing by alleging specific acts connecting the defendant with the forum . . . ." *Philip Morris*, 116 F. Supp. 2d at 121 (citing *Naartex Consulting Corp. v. Watt*, 722 F.2d 779, 787 (D.C. Cir. 1983)). Unlike a Rule 12(b)(6) motion to dismiss, the Court need not treat all of a plaintiff's allegations as true when making a personal jurisdiction determination. The Court may instead receive and weigh affidavits and any other relevant matter to assist it in determining the jurisdictional facts. *See id.* at 120 n.4. However, the Court must resolve any factual discrepancies with regard to establishing personal jurisdiction in favor of the plaintiff. *See Crane v. N.Y. Zoological Soc'y*, 894 F.2d 454, 456 (D.C. Cir. 1990).

2. The District of Columbia Long-Arm Statute

Where subject matter jurisdiction is based on diversity of citizenship, the District's long-arm statute determines whether there is a basis for exercising personal jurisdiction over a defendant. *See* Fed. R. Civ. P. 4(k)(1)(A); *Crane*, 894 F.2d at 455. The District of Columbia has two long-arm statutes—one extending "general jurisdiction" over defendants whose contacts

with the District are enduring, and another extending "specific jurisdiction" over defendants

whose contacts with the District relate to the underlying claims at issue in the lawsuit.  *See* D.C.

Code §§ 13-422 to -423 (2001).  It is clear from the parties' briefing that only specific

jurisdiction is at issue here.

The District's specific jurisdiction long-arm statute provides, in relevant part, that "[a]

District of Columbia court may exercise personal jurisdiction over a person, who acts directly or

by an agent, as to a claim for relief arising from the person's . . . transacting any business in the

District of Columbia . . . ."  *Id.* § 13-423(a)(1).  For a plaintiff to establish personal jurisdiction, it

must establish (1) that the forum state's jurisdictional statute confers such jurisdiction, and

(2) that such exercise is in accord with the Fifth or Fourteenth Amendment Due Process Clause.

*See* Fed. R. Civ. P. 4(k)(1)(A); *Lewy v. S. Poverty Law Ctr., Inc.*, 723 F. Supp. 2d 116, 122

(D.D.C. 2010).  Here, this two-pronged analysis collapses into one, for the "transacting business"

provision of the District's long-arm statute is coextensive with the constitutional requirements

for personal jurisdiction, *see Crane v. Carr*, 814 F.2d 758, 762 (D.C. Cir. 1987) (citing

*Mouzavires v. Baxter*, 434 A.2d 988, 990–92 (D.C. 1981) (en banc)), and thus requires that non-

resident defendants "have certain minimum contacts with [the forum state] such that the

maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"

*Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S.

457, 463 (1940)); *accord Helmer v. Doletskaya*, 393 F.3d 201, 205 (D.C. Cir. 2004).

In the District, for purposes of establishing specific personal jurisdiction under the

"transacting business" provision in section 13-423(a)(1) and in accordance with the extensive

application of the long-arm statute under the Due Process Clause, a plaintiff must prove that the

defendant purposefully established minimum contacts in the District.  Because section

13-423(a)(1) is limited by section 13-423(b), the Court may only consider defendant contacts from which the plaintiff's specific claims arise. *See* D.C. Code § 13-423(b); *Brunson v. Kalil & Co.*, 404 F. Supp. 2d 221, 227 (D.D.C. 2005) (citing *Schwartz v. CDI Japan, Ltd.*, 938 F.Supp. 1, 5 (D.D.C. 1996)). Under the statute, a plaintiff must meet a three-pronged test. The plaintiff must demonstrate that (1) the defendant transacted business in the District; (2) the claim arose from the business transacted in the District; and (3) the defendant "had minimum contacts with the District of Columbia such that the Court's exercise of personal jurisdiction would not offend 'traditional notions of fair play and substantial justice.'" *Dooley v. United Techs. Corp.*, 786 F. Supp. 65, 71 (D.D.C. 1992) (quoting *Int'l Shoe*, 326 U.S. at 316), *overruled on other grounds by FC Inv. Grp. LC v. IFX Mkts., Ltd.*, 529 F.3d 1087 (D.C. Cir. 2008). The minimum contacts test will only be satisfied if a defendant "purposefully avails itself of the privilege of conducting activities within the forum . . . ," *Hanson v. Denckla*, 357 U.S. 235, 253 (1958), and if litigation in the forum is consistent with fair play and substantial justice, *see World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980). *See also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985).

## B. Analysis

For jurisdiction over Defendants to be conferred upon this Court, "the most critical inquiry is not whether the nonresident defendant is physically present in the forum but whether the defendant's contacts with the forum are of such a quality and nature that they manifest a deliberate and voluntary association with the forum." *Mouzavires v. Baxter*, 434 A.2d 988, 995 (D.C. 1981) (en banc). Relevant factors for establishing specific jurisdiction under the "transacting business" provision of the D.C. long-arm statute include the defendant's voluntary and deliberate reaching out into the District to contract with an organization here; the defendant's

communication with the plaintiff in the District; the defendant's attendance at meetings in the District; the defendant's holding D.C. agents out as its representatives; the length of time for which the engagement lasted; whether the defendant contemplated or was aware that work under the contract would be performed in the District; whether the defendant derived economic benefit from the plaintiff; and whether the harm caused by the defendant is felt by the plaintiff in the District. *See Thompson Hine LLP v. Smoking Everywhere, Inc.*, 840 F. Supp. 2d 138, 143 (D.D.C. 2012) (collecting cases). Courts have been "particularly attentive" to the final factor— whether the "harm caused by the defendant[s] will be felt in the District." *Id.* at 143 (citing *Lans v. Adduci Mastriani & Schaumberg L.L.P.*, 786 F. Supp. 2d 240 (D.D.C. 2011), *Staton v. Looney*, 704 F. Supp. 303, 304–05 (D.D.C. 1989), and *Fisher v. Bander*, 519 A.2d 162, 164 (D.C. 1986)).

The business transacted in the District of Columbia by Defendants underlies this lawsuit. Although the parties dispute the extent to which Cater controlled Ms. Conway's conduct in "reaching out" to the District and to Mr. Meachum specifically, resolving factual disputes in favor of AAN, *see Crane*, 894 F.2d at 456, it is apparent that Cater did associate with Ms. Conway, an active political fundraiser in the District, for the purpose of planning events around the RNC, a politically-oriented event of national importance. *See* Conway Decl. ¶ 5, ECF No. 10-1. There is also evidence that Cater arranged for Ms. Conway to put it in touch with organizations that would help facilitate the events it wished to hold. *See* Meachum Decl. ¶ 2, ECF No. 8-1. Ms. Conway subsequently contacted Mr. Meachum to explore the potential of a business relationship between AAN, a business operating within the District, and Cater. *See id.*; Conway Decl. ¶¶ 7–8, ECF No. 10-1. By all accounts, this connection formed the beginning of

the parties' relationship both generally and for purposes of the contracts underlying this litigation.

Mr. Jennings then physically travelled to the District to meet with Mr. Meachum to explain his desire for funds from AAN. *See* Cater Aff. ¶ 7, ECF No. 6-2; Conway Decl. ¶¶ 10–12, ECF No. 10-1. Mr. Jennings and AAN remained in contact after that meeting in order to further explore the prospect of a business relationship. Once an agreement in principle had been reached, Cater retained Mr. Berke, a K Street lawyer, to negotiate and help document the terms on its behalf. *See* Meachum Decl. ¶ 8, ECF No. 8-1. Through negotiations between Mr. Berke and AAN's counsel, the parties finalized two contracts surrounding the RNC. *See id.* ¶ 9. As a direct result of those agreements, Cater received hundreds of thousands of dollars from AAN, a set of transactions that forms the basis of this lawsuit. *See* Compl. ¶¶ 6, 8–9, ECF No. 1. It is not only the Skynyrd Contract that is relevant for purposes of establishing specific jurisdiction in this litigation, for the complaint suggests that the alleged $200,000 loan was made in order for Defendants "to conduct events and carry out obligations in Tampa"—an allegation that implicates not just the Skynyrd Contract, but the parties' entire relationship surrounding the RNC event planning. *See id.* ¶ 8. Indeed, the parties formed separate contracts for at least two performers at the RNC and reached out to several others. *See* Meachum Decl. ¶ 9, ECF No. 8-1; Conway Decl. ¶ 22, ECF No. 10-1.

If AAN indeed has a right to the funds requested, the harm caused by Defendants' conduct will squarely have been felt within the District of Columbia. Although AAN is a Delaware corporation, its principal, and only, place of business lies in the District. *See* Compl. ¶ 2(a), ECF No. 1; Pl.'s Reply Supp. Cross-Mot. Lim. Disc. 11, ECF No. 12.

Defendants focus heavily on the fact that much of the performance under the Skynyrd Contract was to occur in Tampa, and that Defendants primarily operated from within Florida. But the proper inquiry is whether Defendants established minimum contacts with the District of Columbia, not whether their contacts with Florida were more substantial. Personal jurisdiction may lie in more than one district. Defendants worked with Ms. Conway, if not for the purpose of contacting AAN directly, at least for purpose of discussing potential events to hold in connection with the RNC; according to some evidence, worked with Ms. Conway for the express purpose of forming connections with D.C. organizations interested in funding the RNC events; traveled to the District in order to meet with AAN, whose only place of business is located here; engaged in extended negotiations with AAN, a District resident; finalized multiple agreements in furtherance of the business relationship at issue in this litigation; and is alleged to have caused injury here. The Court finds that Defendants' contacts with the District of Columbia were sufficiently deliberate that they "should reasonably [have] anticipate[d] being haled into court" here. *World-Wide Volkswagen*, 444 U.S. at 297. This Court has specific personal jurisdiction over Defendants in this case.[2]

## IV.  VENUE

### A.  Legal Standard

Defendants alternatively move to dismiss or transfer AAN's complaint for improper venue. *See* Fed. R. Civ. P. 12(b)(3). Under the Federal Rules of Civil Procedure and relevant

---

[2] Because Mr. Jennings was the primary actor reaching out from Florida to Ms. Conway, Mr. Meachum, AAN, and Mr. Berke on behalf of Cater, those actions establish personal jurisdiction over him individually even if they were actions taken within the scope of his employment. *See Lans v. Adduci Mastriani & Schaumberg L.L.P.*, 786 F. Supp. 2d 240, 281–82 (D.D.C. 2011) (holding that the fiduciary shield doctrine is inapplicable where the individual is "more than an employee" of the company).

venue statutes, a court should dismiss or transfer a plaintiff's complaint if the plaintiff's chosen

venue is improper or inconvenient.  *See* 28 U.S.C. § 1391 (Supp. V 2011); *id.* § 1404 (2006

& Supp. V 2011); *id.* § 1406 (2006).  While a plaintiff bears the burden of proving that venue is

proper, a court should accept the plaintiff's well-pleaded factual allegations as true, resolve any

factual conflicts in the plaintiff's favor, and draw all reasonable inferences in favor of the

plaintiff.  *See Hunter v. Johanns*, 517 F. Supp. 2d 340, 343 (D.D.C. 2007); *Davis v. Am. Soc'y of*

*Civil Eng'rs*, 290 F. Supp. 116, 121 (D.D.C. 2003).  The Court need not accept the plaintiff's

legal conclusions as true, *see 2215 Fifth St. Assocs. LP v. U-Haul Int'l, Inc.*, 148 F. Supp. 2d 50,

54 (D.D.C. 2001), but a defendant must present facts that will defeat the plaintiff's assertion of

venue in order to prevail on the motion, *see Hunter*, 517 F. Supp. 2d at 343.  If a court finds that

venue is improper, it must dismiss the case or, in the interests of justice, transfer the case to a

proper venue.  *See* 28 U.S.C. § 1406(a).

## B. Analysis

Venue is proper in "(1) a judicial district where any defendant resides, if all defendants

are residents of the State in which the district is located; (2) a judicial district in which a

substantial part of the events or omissions giving rise to the claim occurred, or a substantial part

of property that is the subject of the action is situated; or (3) if there is no district in which an

action may otherwise be brought . . . , any judicial district in which any defendant is subject to

the court's personal jurisdiction with respect to such action."  *Id.* § 1391(b).  The parties focus

exclusively on whether the events or omissions giving rise to AAN's claim occurred here.[3]

---

[3] Even where venue is proper, a court may nonetheless transfer the case to a more
convenient venue in the interest of justice.  *See* 28 U.S.C. § 1404(a) (Supp. V 2011).  However,
Defendants have expressly disavowed the option of seeking to transfer the case under section
1404; they rely solely upon the supposed impropriety of this venue.  *See* Defs.' Reply Supp. Mot.
Dismiss 12 n.9, ECF No. 10.  The Court is therefore faced with the narrow question of whether

In discussing venue, the parties raise the same factual arguments they presented in the context of personal jurisdiction. The Court therefore finds that it is a proper venue for this case for all of the same reasons it has personal jurisdiction over Defendants. *See generally supra* Part III.B. Defendants associated with a prominent political fundraiser within the District of Columbia to discuss hosting events related to the RNC, and, according to some evidence, to connect with D.C. political organizations that would be amenable to funding those events. *See* Meachum Decl. ¶ 2, ECF No. 8-1; Conway Decl. ¶ 5, ECF No. 10-1. Mr. Jennings physically traveled to the District to form a business relationship with AAN, an organization located in the District, and continued to engage in extensive communications with AAN. *See* Cater Aff. ¶ 7, ECF No. 6-2; Conway Decl. ¶¶ 10–12, ECF No. 10-1. Defendants then retained a D.C. attorney to negotiate and document the terms of their business relationship with AAN, whose counsel was also located here. *See* Meachum Decl. ¶¶ 8–9, ECF No. 8-1. And Defendants are alleged to have caused injury to AAN, whose sole office is in the District. *See* Compl. ¶ 2(a), ECF No. 1; Pl.'s Reply Supp. Cross-Mot. Lim. Disc. 11, ECF No. 12.

Again, Defendants rely extensively on this lawsuit's connection with Florida, pointing out that Defendants primarily operated there and that the events were to be held there. While such arguments may be compelling on consideration of a motion to transfer the case in the interest of justice under section 1404, that is not what Defendants seek here. *See supra* note 3. Because venue may be proper in more than one district, *see* 14D Charles Alan Wright et al., *Federal Practice and Procedure* § 3806.1 (3d ed. 2007) ("[I]t is now absolutely clear . . . that there can be more than one district in which a substantial part of the events giving rise to the claim occurred."), the proper inquiry is whether a substantial part of the events or omissions at

"a substantial part of the events or omissions giving rise to the claim occurred" in the District of Columbia. 28 U.S.C. § 1391(b)(2) (Supp. V 2011).

issue in this lawsuit occurred in the District of Columbia. Because they did, venue is proper here under section 1391(b)(2).

## V. FAILURE TO STATE A CLAIM

### A. Legal Standard

The Federal Rules of Civil Procedure require that a complaint contain "a short and plain statement of the claim" in order to give the defendant fair notice of the claim and the grounds upon which it rests. Fed. R. Civ. P. 8(a)(2); *accord Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam). A motion to dismiss under Rule 12(b)(6) does not test a plaintiff's ultimate likelihood of success on the merits; rather, it tests whether a plaintiff has properly stated a claim. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). A court considering such a motion presumes that the complaint's factual allegations are true and construes them liberally in the plaintiff's favor. *See, e.g.*, *United States v. Philip Morris, Inc.*, 116 F. Supp. 2d 131, 135 (D.D.C. 2000). It is not necessary for the plaintiff to plead all elements of her prima facie case in the complaint. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511–14 (2002); *Bryant v. Pepco*, 730 F. Supp. 2d 25, 28–29 (D.D.C. 2010).

Nevertheless, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This means that a plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007) (citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are therefore insufficient to withstand a motion to dismiss. *Iqbal*, 556

U.S. at 678. A court need not accept a plaintiff's legal conclusions as true, *see id.*, nor must a court presume the veracity of the legal conclusions that are couched as factual allegations. *See Twombly*, 550 U.S. at 555.

### B. Analysis

Defendants move, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss AAN's unjust enrichment claim and all claims against Mr. Jennings individually. *See* Defs.' Mem. P. & A. Supp. Mot. Dismiss 16–19, ECF No. 6. The parties disagree over the choice of law, with Defendants relying on Wyoming law and AAN relying on D.C. law. *Compare id.*, *with* Pl.'s Opp'n Mot. Dismiss & Cross-Mot. Lim. Disc. 14–17, ECF No. 8.[4] But despite exchanging multiple rounds of briefing, the parties have not substantively analyzed the proper choice of law. Because AAN's claims survive even if the movants (Defendants) are correct that Wyoming law applies, the Court will assume without deciding that Wyoming law is applicable as to all claims for purposes of this opinion.

### 1. Unjust Enrichment

AAN pleads two claims for breach of contract: the first as to the alleged $150,000 ticket deposit, and the second as to the alleged $200,000 loan. *See* Compl. ¶¶ 12–13, ECF No. 1.[5] For both claims, unjust enrichment is pleaded as an alternative to a breach of contract claim. *See id.* "Unjust enrichment is the unjust retention of a benefit to the loss of another. It exists as a basis

---

[4] With respect to the alter ego issues raised in the motion to dismiss all claims against Mr. Jennings, AAN does not take the position that any particular state's law does apply—only that Wyoming law does not. *See* Pl.'s Opp'n Mot. Dismiss & Cross-Mot. Lim. Disc. 16 & n.3, ECF No. 8.

[5] AAN originally pleaded, in the alternative, that Defendants were unjustly enriched as to the $150,000 deposit. *See* Compl. ¶ 12, ECF No. 1. However, based on Defendants' admission that an express contract controls that dispute, *see* Defs.' Mem. P. & A. Supp. Mot. Dismiss 16, ECF No. 6, AAN has withdrawn its assertion of unjust enrichment as to those funds only. *See* Pl.'s Opp'n Mot. Dismiss & Cross-Mot. Lim. Disc. 14, ECF No. 8.

for recovery for goods or services rendered under circumstances where it would be inequitable if no compensation was paid in return." *Schlinger v. McGhee*, 268 P.3d 264, 272 (Wyo. 2012). But "the unjust enrichment remedy is not available when an express contract exists." *Sowerwine v. Keith*, 997 P.2d 1018, 1021 (Wyo. 2000) (citing 66 Am. Jur. 2d *Restitution and Implied Contracts* § 6 (1973)); *see also Schlinger*, 268 P.3d at 272 ("Unjust enrichment is an equitable remedy. As such, it cannot exist where there is an express contract governing the relationship between the parties.").

Defendants challenge AAN's unjust enrichment claim, arguing that the claim must fail because a valid, written contract governs the relationship between the parties. *See* Defs.' Mem. P. & A. Supp. Mot. Dismiss 16–17, ECF No. 6. AAN argues that the elements of an express contract have not been established as to the alleged $200,000 loan, and so it may plead unjust enrichment in the alternative. *See* Pl.'s Opp'n Mot. Dismiss & Cross-Mot. Lim. Disc. 14–15, ECF No. 8. AAN has the better argument at the motion to dismiss stage. Under Wyoming law, a party may *plead* unjust enrichment alongside an incompatible claim where the elements of the claims are disputed, but it may not ultimately *prevail* on both. *See Redland v. Redland*, 288 P.3d 1173, 1209 (Wyo. 2012) (holding that an alternative pleading of unjust enrichment and recovery of property is not barred by the election of remedies doctrine or the Wyoming Rules of Civil Procedure); *see also* Fed. R. Civ. P. 8(d)(2)–(3) (allowing alternative pleading of inconsistent claims or defenses). Although the parties are in agreement that the written contract applies to the ticket deposit, they dispute whether the written contract governs the alleged loan—Defendants argue that it does, and AAN argues that it does not. *Compare* Defs.' Mem. P. & A. Supp. Mot. Dismiss 17, ECF No. 6, *with* Pl.'s Opp'n Mot. Dismiss & Cross-Mot. Lim. Disc. 14–15, ECF No. 8. To resolve this dispute, the Court would be required to, at the very least, interpret the

contract. But because the parties have not briefed the contract interpretation issue, that would be a premature undertaking. Indeed, even though Defendants insist that the written contract governs, they do not point to any specific controlling provision. AAN may therefore plead an alternative claim for unjust enrichment.

The cases cited by Defendants are not to the contrary. In *Big-D Signature Corp.*, the court had already found the defendant ultimately liable as to a breach of contract claim for the transaction at issue, and so an unjust enrichment claim could no longer stand. *See Big-D Signature Corp. v. Sterrett Props., LLC*, 288 P.3d 72, 80 (Wyo. 2012). And in *Schlinger*, there was no dispute between the parties as to the existence of an oral contract governing the transaction at issue. *See Schlinger*, 268 P.3d at 272. Here, by contrast, there is still a live dispute as to whether AAN's alleged $200,000 loan to Defendants is covered by the written contract. The Court will therefore deny Defendants' motion to dismiss the unjust enrichment claim.

### 2. Individual Liability

AAN pleads its claims for breach of contract and unjust enrichment against not only Cater, but also against Mr. Jennings individually. *See* Compl. ¶¶ 12–13, ECF No. 1. Mr. Jennings challenges the claims on the basis that Wyoming law prevents Cater's debts and obligations from becoming his own personal debts merely by virtue of his status as a member of the Cater limited liability company. *See* Defs.' Mem. P. & A. Supp. Mot. Dismiss 18–19, ECF No. 6. AAN does not address Mr. Jennings's argument substantively, and merely argues that Wyoming law does not control the analysis. *See* Pl.'s Opp'n Mot. Dismiss & Cross-Mot. Lim. Disc. 16–17, ECF No. 8.

Under the doctrine of alter ego, "when evidence is presented that adherence to the fiction of the separate corporate existence would sanction a fraud or promote injustice, courts will

disregard the separate entity and hold shareholders individually liable to third parties for damages caused by the corporation's acts." *Liberman v. Mossbrook*, 208 P.3d 1296, 1312 (Wyo. 2009) (citing *Miles v. CEC Homes, Inc.*, 753 P.2d 1021, 1023 (Wyo. 1988)).  In such instances, a court will "pierce the corporate veil" and hold the shareholder liable for the acts of the business. Until recently, Wyoming law provided that "the members of a limited liability company . . . are [not] liable under a judgment, decree or order of a court, or in any other manner, for a debt, obligation or liability of the limited liability company."  Wyo. Stat. Ann. § 17-15-113 (2005) (repealed 2010).  However, the statute was rewritten as part of the Wyoming Limited Liability Company Act, ch. 94, 2010 Wyo. Sess. Laws 429 (codified as amended at Wyo. Stat. Ann. §§ 17-25-101 to -111, 17-29-101 to -1105 (Supp. 2012)), which introduced some changes to the applicability of the alter ego doctrine.  The relevant statute now provides:

> (a) The debts, obligations or other liabilities of a limited liability company, whether arising in contract, tort or otherwise:
>
> > (i) Are solely the debts, obligations or other liabilities of the company; and
> >
> > (ii) Do not become the debts, obligations or other liabilities of a member or manager solely by reason of the member acting as a member or manager acting as a manager.
>
> (b) The failure of a limited liability company to observe any particular formalities relating to the exercise of its powers or management of its activities is not a ground for imposing liability on the members or managers for the debts, obligations or other liabilities of the company.

Wyo. Stat. Ann. § 17-29-304 (Supp. 2012).

Although the Supreme Court of Wyoming has not yet had occasion to apply the revised veil-piercing statute, it has found that the predecessor statute allowed the equitable doctrine of alter ego to pierce the corporate veil of limited liability companies.  *See Kaycee Land & Livestock v. Flahive*, 46 P.3d 323, 329 (Wyo. 2002) ("No reason exists in law or equity for

treating an LLC differently than a corporation is treated when considering whether to disregard the legal entity. We conclude the equitable remedy of piercing the veil is an available remedy under the Wyoming Limited Liability Company Act."). The parties do not analyze the language of either statute, but the Court notes that the substance of the predecessor act—and therefore the holding of *Kaycee Land & Livestock*—appears to have been preserved in section 17-29-304(a).[6]

Subsection (b), however, adds new material to the applicability of the alter ego doctrine under Wyoming law. On the face of the statutory text, the statute merely precludes consideration of just one factor of the alter ego balancing test—the failure to observe particular formalities. *See* Wyo. Stat. Ann. § 17-29-304(b). There are many other equitable factors involved in the alter ego analysis, and the revised statute does not explicitly foreclose their consideration. *See PanAm. Mineral Servs., Inc. v. KLS Enviro Res., Inc.*, 916 P.2d 986, 990 (Wyo. 1996) (citing *Amfac Mech. Supply Co. v. Federer*, 645 P.2d 73, 77–78 (Wyo. 1982)) (listing factors); Dale W. Cottam et al., *The 2010 Wyoming Limited Liability Company Act: A Uniform Recipe with Wyoming "Home Cooking"*, 11 Wyo. L. Rev. 49, 63–64 (2011) (comparing section 17-29-304(b) to similar Wyoming statutes and concluding that "other categories . . . , including fraud, inadequate capitalization, and intermingling the business and finances of a company and its members, remain as grounds for piercing the LLC veil").

This District of Columbia federal court is hesitant to conclusively interpret a Wyoming state law as a matter of first impression where the parties have not provided briefing analyzing the statute's text and where it is not even clear that Wyoming law would apply. Nonetheless, the

---

[6] Indeed, this particular revision appears to have made clearer the availability of the alter ego doctrine by clarifying that the veil may not be pierced "*solely by reason* of the member acting as a member . . . ." Wyo. Stat. Ann. § 17-29-304(a)(ii) (Supp. 2012) (emphasis added). As noted above, the alter ego doctrine imposes liability after consideration of equitable factors, and not merely on the basis of an individual's status as a member or manager of a limited liability company.

Court is satisfied at this stage Mr. Jennings has failed to meet his burden to show that an alter ego claim cannot be pleaded against him. AAN pleads that Mr. Jennings is the alter ego of Cater,[7] *see* Compl. ¶ 11, ECF No. 1, and Mr. Jennings fails to demonstrate the legal insufficiency of that pleading, even if he is correct that Wyoming law applies. Indeed, as discussed above, the statutory text, case law, and commentary suggest that the revised Wyoming Limited Liability Company Act removes just one factor of the alter ego analysis. The Court will therefore deny Mr. Jennings's motion to dismiss AAN's claims against him.

## VI.  AAN'S DISCOVERY MOTIONS

AAN has also made two discovery-related motions. First, it filed a motion seeking jurisdictional discovery in order to bolster its arguments that this Court has personal jurisdiction over Defendants and that venue is proper here. *See* Pl.'s Opp'n Mot. Dismiss & Cross-Mot. Lim. Disc. 12–13, ECF No. 8. Because the Court resolves both the jurisdiction and venue issues in favor of AAN, the request for jurisdictional discovery is moot.

AAN's second discovery motion seeks a court order (1) compelling Defendants to respond to document requests and produce Mr. Jennings for deposition, and (2) imposing sanctions pursuant to Federal Rule of Civil Procedure 37 for Defendants' failure to respond to those discovery requests. *See generally* Pl.'s Mot. Compel, ECF No. 19. Under the Federal

_____

[7] Mr. Jennings does not attack the plausibility of AAN's allegation directly, but presents testimonial evidence arguing that he is not, in fact, the alter ego of Cater. *See* Defs.' Mem. P. & A. Supp. Mot. Dismiss 18–19, ECF No. 6; Cater Aff. ¶¶ 4–12, 17, ECF No. 6-2; Defs.' Reply Supp. Mot. Dismiss 21–22, ECF No. 10. Of course, it is inappropriate for the Court to weigh evidence at the Rule 12(b)(6) stage. *See United States v. Philip Morris, Inc.*, 116 F. Supp. 2d 131, 135 (D.D.C. 2000) ("At the motion to dismiss stage, 'the only relevant factual allegations are the plaintiffs',' and they must be presumed to be true." (quoting *Ramirez de Arellano v. Weinberger*, 745 F.2d 1500, 1506 (D.C. Cir. 1984))). Although AAN's alter ego allegations are somewhat cursory, Defendants have not contended that the allegations rise to the level of mere "labels and conclusions" or "a formulaic recitation of the elements" of an alter ego theory. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Rules of Civil Procedure, the parties must confer "as soon as practicable" to set forth a plan for discovery. *See* Fed. R. Civ. P. 26(f)(1). The Rules prohibit a party from seeking discovery before the Rule 26(f) conference occurs, with few exceptions. *See* Fed. R. Civ. P. 26(d)(1). Our local rules require that the parties discuss a broad range of topics at the Rule 26(f) conference, including the potential for settlement; the likelihood that the case will be resolved on a dispositive motion; and proposed schedules for amending pleadings, dispositive motions, and discovery. *See* D.D.C. Civ. R. 16.3(c).

It is clear from AAN's meet and confer statement that the parties have not yet held the Rule 26(f) conference. AAN's statement reveals that the parties exchanged a few brief emails on the limited subject of jurisdictional discovery. *See* Meet & Confer Stmt. 1–2, ECF No. 17. AAN wished to press forward with a jurisdictional discovery plan, while Defendants took the position that any discovery would be premature absent a court order. *See id.*[8] The correspondence does not show that the parties discussed settlement, dispositive motions, amended pleadings, or many of the myriad other subjects the parties are required to consider at the Rule 26(f) conference. *See* D.D.C. Civ. R. 16.3(c). Because the parties have not yet held a Rule 26(f) conference, AAN's discovery requests were premature. *See* Fed. R. Civ. P. 26(d)(1). The Court will therefore deny AAN's motion to compel responses to those requests. Because Defendants were under no obligation to respond to AAN's discovery requests, the Court will also deny AAN's motion for sanctions.

---

[8] In both its meet and confer statement and its correspondence to Defendants, AAN expressed a concern that, by waiting for the Court to dispose of Defendants' motion to dismiss before conferring on discovery, the parties were violating the Rule 26(f) requirement that the parties confer "as soon as practicable" to set forth a discovery plan. *See* Meet & Confer Stmt. 1–2, ECF No. 17; *see also* Fed. R. Civ. P. 26(f)(1). But AAN's concern is misplaced, as one purpose of challenging the sufficiency of a complaint at the pleading stage is to shield a defendant from facing the burden of expensive and lengthy discovery. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558–59 (2007).

## VII.  CONCLUSION

For the foregoing reasons, the Court will dismiss AAN's unjust enrichment allegation in relation to the alleged $150,000 ticket deposit, but will deny the remainder of Defendants' motion to dismiss.  The Court will also deny AAN's cross-motion for jurisdictional discovery and AAN's motion to compel and for sanctions.  An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:   September 30, 2013                                          /s/ Rudolph Contreras
                                                                        RUDOLPH CONTRERAS
                                                                        United States District Judge